UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HUGH ALEXANDER,

      Plaintiff,

v.                              Case No:  2:13-cv-856-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

Plaintiff Hugh Alexander appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability and Disability Insurance Benefits ("DIB").   For the reasons discussed herein, the decision of the Commissioner is reversed and this matter is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four.

### I.    Issues on Appeal

There are two overarching issues on appeal: (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination; and (2) whether the ALJ erred with respect to the weight assigned Plaintiff's treating physicians.

### II.    Procedural History and Summary of the ALJ's Decision

On April 5, 2010, Plaintiff filed an application for a period of disability and DIB, alleging he became disabled and unable to work on November 18, 2009.   Tr. 150-58.   The Social Security Administration denied his claim initially on September

29, 2010 and upon reconsideration on January 4, 2011.   Tr. 85-86, 87-88.   Plaintiff then requested and received a hearing before ALJ William M. Mancino on December 9, 2011, during which he was represented by an attorney.   Tr. 63-84, 97-98. Plaintiff and Vocational Expert Gary W. Maisel testified at the hearing.

On July 10, 2012, the ALJ issued a decision finding that Plaintiff is not disabled and denying his claim.   Tr. 14-26.   The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014.   Tr. 16.   At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 18, 2009, the alleged onset date ("AOD").   *Id.*   At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, sphenoid sinus disease, headaches, osteoarthritis of the knee, cubital tunnel syndrome of right elbow, closed head injury, major depressive disorder and panic disorder.   *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 17.   The ALJ expressly considered whether Plaintiff met the requirements of Listings 12.04 and 12.06.   *Id.*

Taking into account the effects from all of Plaintiff's impairments, the ALJ determined that Plaintiff had the RFC to perform light work, with additional limitations.   Tr. 19.   The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of the symptoms

were not credible to the extent they were inconsistent with the ALJ's RFC assessment.   Tr. 20.

The ALJ then found that Plaintiff was not capable of performing any of his past relevant work ("PRW") as a police officer and code enforcement officer.   Tr. 24. The ALJ determined that Plaintiff is able to perform such representative occupations as cleaner (DOT 323.687-014), of which 473,812 jobs exist nationally, 12,782 in Florida and 293 in southwest Florida; and small products assembler (DOT 706.684-022), which is classified as light, unskilled work with SVP 2 and of which 377,923 jobs exist nationally, 13,032 in Florida and 217 in southwest Florida.   Tr. 25.   The ALJ therefore found that Plaintiff was not disabled and denied his claim.   Tr. 26.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on October 25, 2013.   Tr. 1-8, 9-10.   Accordingly, the ALJ's July 10, 2012 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on December 6, 2013.   Doc. 1.

## III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. § 404.1520.

The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The district court must consider the entire record, including new evidence submitted to the Appeals Council for the first time, in determining whether the Commissioner's final decision is supported by substantial evidence.   *Ingram v. Astrue*, 496 F.3d 1253, 1265 (11th Cir. 2007).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   "The

district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV.   Discussion

Plaintiff contends that the ALJ erred by failing to account for his manipulative limitations in his RFC, and therefore the ALJ's RFC determination is not supported by substantial evidence.   Plaintiff also argues that the ALJ failed to comply with the Regulations when he failed to assign controlling weight to the opinions of two of Plaintiff's treating physicians and by failing to state how much weight he assigned to one of those opinions.   Each argument is addressed separately.

### a.   Whether the ALJ properly determined Plaintiff's RFC

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence, because the medical evidence of record establishes that his limitations are greater than set forth in the RFC.   Specifically, Plaintiff alleges that the ALJ failed to consider all of his severe impairments, because the RFC does not include manipulative limitations.   The Commissioner argues that the ALJ properly evaluated Plaintiff's RFC in accordance with the Regulations, and substantial evidence supports his opinion.

The RFC is the most that a claimant can do despite his limitations.   *See* 20 C.F.R. § 404.1545(a).   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c).   The ALJ is required to

assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. § 404.1545(a).   The claimant's age, education and work experience are considered in determining his RFC and whether he can return to his past relevant work, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Here, the ALJ determined that Plaintiff has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except that he can frequently climb ramps/stairs, stoop, kneel, crouch, and crawl; and can occasionally climb ladders/ropes/scaffolds. He should avoid concentrated exposure to extreme cold and vibration. He retains the mental residual functional capacity to perform unskilled work where interactions with others are routine, superficial, and incidental to the work performed.

Tr. 19.   In making his RFC determination, the ALJ stated that he considered all symptoms and the extent to which they can reasonably be accepted as consistent with other evidence in the record.   *Id.*   The ALJ noted that physical examination findings revealed only mild physical functional limitations.   Tr. 20.   The ALJ then discussed in detail the specific medical evidence supporting his determination.

The ALJ cited medical records from Lee Memorial Hospital following Plaintiff's car accident on November 17, 2009, the AOD, which state that Plaintiff was able to ambulate without difficulty at the accident scene, but complained of pain in his lower back.   Tr. 20 (citing Tr. 254-68).   Diagnostic testing was largely normal, and there

was no evidence of fracture.  *Id.*  The ALJ next discussed June 2010 records of examining physician Stanley Rabinowitz, which state that Plaintiff's range of motion ("ROM") in all joints was normal, and that he had no difficulty getting on or off the examination table and only moderate difficulty squatting.  *Id.* (citing Tr. 396-402). Dr. Rabinowitz also found that Plaintiff's grip strength in both hands and digital dexterity appeared normal.  Tr. 398.

The ALJ also discussed Plaintiff's treatment by neurologist David B. Sudderth, M.D., who treated Plaintiff from November 19, 2009 until at least April 22, 2010.  Tr. 20-21 (citing 314-36).  Dr. Sudderth identified Plaintiff's closed cranial trauma and cervical and lower lumbar spine pain and found that Plaintiff appeared to have mild traumatic brain injury.  Tr. 20, 21 (citing Tr. 323, 331); *see also generally* Tr. 314-36 (treatment notes reflecting that Plaintiff consistently reported pain).  The ALJ noted that Dr. Sudderth did not recommend surgery but stated that he did not believe that Plaintiff could return to work, at least temporarily.  Tr. 20-21 (citing Tr. 329, 331). Although Dr. Sudderth noted that Plaintiff reported some memory impairments, including difficulty with short-term memory and concentration, his examination notes also indicated that Plaintiff's communication and other functions remained intact.  Tr. 21 (citing Tr. 320, 326-27, 330).  Dr. Sudderth referred Plaintiff for neuropsychological testing.  Tr. 341.  Plaintiff underwent a structured clinical interview and psychological testing completed by Mabel Lopez, Ph.D., and he was scheduled to return for cognitive testing, but the ALJ noted that there is no report of the cognitive testing in evidence.  Tr. 21 (citing Tr. 341).

The ALJ considered records from Keith Warde, D.C., Plaintiff's treating chiropractor from December 8, 2009 to May 21, 2010.   Tr. 21 (Tr. 269-300, 346-94, 516-25).   The records reflect that Plaintiff reported severe pain, but Dr. Warde released Plaintiff to normal work duties on March 2, 2010, with restrictions to lifting no more than 20 pounds and standing for no longer than 10 minutes.   Tr. 384. Records from May 21, 2010 reflect that Plaintiff had improved since his last assessment and could drive 90 minutes without pain, carry light weights, do 20 minutes of housework without increased pain, pick up 15 pounds without increased pain and walk at least one mile.   Tr. 516-17.   Dr. Warde's records also state that the overall global ROM for Plaintiff's cervical, thoracic and lumbar regions showed moderate decreased movement.   Tr. 517.   Dr. Warde further limited Plaintiff to no extended periods of bending, stooping, or reaching, and no lifting greater than 15 pounds.   Tr. 518.

The ALJ discussed Plaintiff's treatment for headaches, including prescriptions, biofeedback and occipital block injections.   Tr. 21 (citing Tr. 308-12, 314-15, 333-35). The ALJ also noted that Dr. Sudderth referred Plaintiff to an ear, nose and throat specialist in September 2010, but there is no evidence that Plaintiff saw a specialist pursuant to the referral.   Tr. 21-22 (Tr. 546).   The ALJ concluded that Plaintiff's failure to follow up with the referral "suggest[ed] the claimant's complaints of related symptoms including headache are not as severe as alleged."   Tr. 22.   The ALJ also discussed Plaintiff's treatment by Dr. John C. Kagan, who administered Plaintiff's lumbar spine epidural injections in May and June 2011.   *Id.*; Tr. 633-35, 636-38.

Dr. Kagan's examinations of Plaintiff's thoracic spine, right knee, ankles and feet on June 6, 2011 were normal.   Tr. 641-43.

The ALJ discussed Plaintiff's right elbow pain, for which he was evaluated by Dr. Sandra B. Collins on September 24, 2010.   Tr. 22 (citing Tr. 436-48).   Dr. Collins' examination notes state that Plaintiff had a markedly positive Tinel's sign and pinch strength weakness, but no atrophy and normal ROM.   *Id.*   Dr. Collins diagnosed Plaintiff with cubital tunnel syndrome and recommended ulnar nerve transposition surgery, but the record does not contain evidence that Plaintiff underwent the procedure.   *Id.*   The ALJ further noted that later treatment records from Millenium Physician Group in October 2011 do not report complaints of elbow pain, or any related functional limitations.   Tr. 22 (citing Tr. 669-74).

Finally, the ALJ discussed the treatment Plaintiff received for mental impairments, including a September 2010 consultative examination by Dr. Claudia Zsigmond.   Tr. 22.   Dr. Zsigmond diagnosed Plaintiff with panic disorder without agoraphobia and major depressive disorder.   Tr. 22 (citing Tr. 430-35).

The ALJ also noted that Plaintiff had been seeing Dr. Rectanus for psychotherapy beginning in February 2010 and continuing through at least March 2011.   Tr. 22-23; Tr. 301-05, 507-14, 620-26, 651-67.   As part of Plaintiff's psychotherapy, Dr. Rectanus recommended that Plaintiff increase his activities outside his household.   *See* Tr. 513 (noting therapeutic recommendation of increased behavior outside household).   Dr. Rectanus also completed a psychological evaluation of Plaintiff on February 12, 2010, after which he found "no indication of a

thought disorder" and determined that Plaintiff's verbal usage and abstraction indicate he "would be judged of average or better intellect."   Tr. 301.   Dr. Rectanus found "some current organic impediment secondary to injury as suggested by some slowness of information processing, some word-finding and other specific recall dysfunction."   *Id.*   Dr. Rectanus noted that Plaintiff suffered a traumatic brain injury as the result of his car accident on November 17, 2009, and recently had suicidal ideation during which he became hopeless and overwhelmed at the impact of the accident on his life.   *Id.*   Dr. Rectanus further noted that Plaintiff's mood had improved and he was less depressed after starting new medication.   *Id.*   Dr. Rectanus also found that Plaintiff has anxiety, migraines on a daily basis, other musculoskeletal pain, poor sleep, loss of taste and smell, poor memory and suffered from a substantial loss of self-esteem.   *Id.*   Dr. Rectanus' initial diagnostic impressions were major depression, single episode and cognitive dysfunction.   Tr. 302.   Dr. Rectanus' treatment notes from October 11, 2010 also note diagnoses of major depression and cognitive dysfunction.   Tr. 666-67.

As to Plaintiff's physical impairments, the ALJ ultimately determined that despite Plaintiff's complaints, he received only conservative treatment, and diagnostic testing revealed only mild degenerative disc disease.   Tr. 23.   The ALJ also noted that Plaintiff failed to follow up with the referral to an ear, nose and throat specialist, and treatment notes suggest that Plaintiff's headaches improved.   *Id.* The ALJ highlighted that there is no evidence in the record that Plaintiff had surgery on his right elbow, as was recommended, and the record contains no complaints of

elbow pain after September 2010. *Id.* The ALJ also stated that no doctor identified specific functional limitations with respect to Plaintiff's mental impairments. *Id.* The ALJ then concluded that Plaintiff retained the ability to perform work-related activities as set forth in his RFC. Tr. 24.

Upon review of the record, with respect to Plaintiff's physical impairments, the ALJ appeared to properly assess Plaintiff's RFC based upon Plaintiff's medical history, daily activities, lay evidence and medical source statements consistent with the requirements of 20 C.F.R. § 404.1545(a). The ALJ discussed the relevant evidence and found that despite his impairments, Plaintiff retained the ability to perform light work, with limitations. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). To the extent that Plaintiff argues the ALJ erred by failing to include limitations related to cubital tunnel syndrome after he found that it was a severe impairment, the Court finds no error. The ALJ considered the relevant evidence consistent with the regulations and explained the reasons for his conclusion. His determination that any limitations related to this impairment do not affect Plaintiff's RFC is supported by substantial evidence.

The same is not true with respect to the ALJ's assessment of Plaintiff's mental limitations. The Court finds that the ALJ's opinion stating "[i]n regard to the claimant's mental impairments, treatment notes did not specify specific functional limitations and instead appeared to focus on normal stresses of daily living" warrants further discussion and, ultimately, remand. Tr. 23. At the conclusion of Plaintiff's

treatment on March 16, 2011, Plaintiff's treating psychologist, Dr. Rectanus, completed a questionnaire regarding Plaintiff's mental RFC.  Tr. 628-31.   In the area of social interaction, Dr. Rectanus determined that Plaintiff has mild limitation in his ability to accept instruction from or respond appropriately to criticism from supervisors or superiors, and marked limitation in his abilities to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes; respond appropriately to co-workers or peers; and relate to the general public and maintain socially appropriate behavior.   Tr. 628-29.   Dr. Rectanus indicated that his findings as to Plaintiff's social limitations would not change even if only minimal contact or interaction with others is required.   Tr. 629.

In the areas of sustained concentration and persistence, Dr. Rectanus found that Plaintiff had marked limitation in his abilities to work in cooperation with or in proximity to others without being distracted by them and to process subjective information accurately and use appropriate judgment.   Tr. 629.   Dr. Rectanus further found that Plaintiff had extreme limitations in his abilities to perform and complete work tasks in a normal work day or week at a consistent pace, carry through instructions and complete tasks independently, maintain attention and concentration for more than brief periods of time and perform at production levels expected by most employers.   Tr. 629-30.

In the area of "adaptation," Dr. Rectanus determined that Plaintiff had marked limitation in his abilities to remember locations and workday procedure and instructions; be aware of normal hazards and take necessary precautions; and

maintain personal appearance and hygiene.  Tr. 630.  Dr. Rectanus found that Plaintiff's adaptation was extremely limited with respect to his abilities to respond appropriately to changes in work setting; behave predictably, reliably and in an emotionally stable manner; and tolerate customary work pressures.  *Id.*  Dr. Rectanus then noted that Plaintiff's condition was likely to deteriorate if he is placed under stress, particularly job stress, because his chronic pain and cognitive dysfunction intensify under stress.  Tr. 631.  Dr. Rectanus also stated that Plaintiff's depression attaches to stressful situations, and he becomes incapacitated. *Id.*

Thus, the ALJ's statement in his opinion that "treatment notes did not identify specific functional limitations" with respect to Plaintiff's mental impairments appears to be inaccurate.  Tr. 23.  Although the ALJ's failure to acknowledge the limitations identified by Dr. Rectanus as functional limitations renders his opinion erroneous, the Court still is required to examine the record as a whole and determine whether substantial evidence supports the ALJ's determination that Plaintiff is not disabled.  Because the Court also finds that the ALJ failed to explain the weight assigned to Dr. Rectanus' opinion, as discussed more fully below, the Court cannot determine that substantial evidence supports the ALJ's disability determination here.

### b. Whether the ALJ complied with the Regulations when assigning weight to Plaintiff's treating physicians

Plaintiff argues that the ALJ erred by failing to accord controlling weight to two of his treating physicians, Dr. Rectanus and Dr. Martinez.  As to Dr. Martinez,

Plaintiff contends that the ALJ failed to state with particularity his reasons for according the opinion reduced weight; as to Dr. Rectanus, Plaintiff asserts that the ALJ failed to state at all how much weight he assigned to this opinion.   The Commissioner argues that the ALJ sufficiently stated his reasons for assigning reduced weight to the opinion of Dr. Martinez.   Although the Commissioner concedes that the ALJ failed to state how much weight he accorded Dr. Rectanus' opinion, the Commissioner contends that the ALJ nevertheless sufficiently articulated his reasons for rejecting at least a portion of the opinion.

Generally, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown."   *Castle v. Colvin*, 557 Fed. Appx. 849, 854 (11th Cir. 2014) (citing *Phillips*, 357 F.3d at 1240); *Lewis*, 125 F.3d at 1440; *Sabo v. Comm'r of Soc. Sec.*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).   "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips*, 357 F.3d at 1241).   Under the regulations, the ALJ must weigh any medical opinion based on the treating relationship with the claimant, the length of the treatment relationship, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source and other factors.   *See* 20 C.F.R. § 404.1527(c)(2)-(6).   Opinions of treating sources, however, usually are given more weight, because treating physicians are the most likely to be able to offer

detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2).

With respect to Dr. Martinez, Plaintiff's treating physician, Plaintiff correctly contends that an ALJ must accord a treating source controlling weight, but he need not do so where, as here, good cause exists to reject the opinion. *Castle*, 557 Fed. Appx. at 854. The ALJ stated that he considered the opinion of Dr. Martinez, and noted that the doctor limited Plaintiff to standing and walking only for one hour at a time in an 8 hour workday, but also only for a total of one hour in an 8 hour workday. Tr. 23 (citing Tr. 674). Dr. Martinez also stated that Plaintiff only can sit for 15 minutes at a time, for a total only of one hour in an 8 hour workday. Tr. 674. He opined that Plaintiff can lift up to 10 pounds, but when prompted to identify how often the amount lifted can be performed during the workday, Dr. Martinez checked "none." *Id.* The ALJ explained that he gave little weight to this opinion, because Dr. Martinez failed to explain the basis for these limitations, which he found are not supported by evidence in the record, and his opinion is inconsistent with other evidence. Tr. 23. The ALJ also determined Dr. Martinez's opinion is internally inconsistent with respect to Plaintiff's lifting ability. *Id.* Thus, upon review of the record and the ALJ's opinion, the ALJ sufficiently articulated good cause for according Dr. Martinez's opinion little weight. *Winschel*, 631 F.3d at 1179. Substantial evidence supports the ALJ's determination in this regard.

With respect to the opinion of Plaintiff's treating psychologist, Dr. Rectanus, however, Plaintiff correctly argues that the ALJ neglected to state how much weight he accorded this opinion.   The ALJ explained that Dr. Rectanus' opinion that Plaintiff is mildly impaired in his ability to accept instruction and criticism from supervisors or superiors is *consistent* with Plaintiff's RFC and other treatment records.   Tr. 24 (citing Tr. 628-31).   The ALJ then noted, however, that Dr. Rectanus also found that Plaintiff either had extreme or marked limitation in all other functional areas and opined that Plaintiff's condition was likely to deteriorate if he were placed in stressful situations.   *Id.*   The ALJ stated that Dr. Rectanus failed to explain the basis for these findings, and the ALJ cited records with which he found Dr. Rectanus' opinion inconsistent.   As an example, the ALJ cited Dr. Sudderth's records of Plaintiff's normal mental status examinations.   *Id.* (citing Tr. 314-45, 539-67).

The Eleventh Circuit has explained that where, as here, an ALJ fails to explain the weight given to a treating source opinion, even where it appears that he did not accord it controlling weight, the Court cannot determine whether the opinion is supported by substantial evidence:

> [B]oth doctors' opinions are contrary to the ALJ's residual functional capacity assessment because both would suggest that [the plaintiff] could not engage in a significant range of light work. Thus, it appears that the ALJ did not give them controlling weight. While it is possible that the ALJ considered and rejected these opinions, he provided no explanation for the weight, or lack thereof, that he assigned to those opinions.

*Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 834 (11th Cir. 2011).

In *Lawton*, the Court found that even though the ALJ stated he considered the opinions of the treating and examining doctors and incorporated them into his RFC, "a statement that the ALJ has considered all of the opinion evidence is not sufficient to discharge his burden to explicitly set forth the weight accorded to that evidence." *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).   Thus, the Eleventh Circuit determined that remand to the Commissioner was warranted, because "[w]ithout a clear explanation of how the ALJ treated these opinions, we cannot determine whether the ALJ's conclusions were rational or supported by substantial evidence." *Id.*   The same holds true here.

Although the ALJ found that Dr. Rectanus' opinion partially is inconsistent with the record, he also found that part of the opinion is supported by and consistent with other record evidence.   Tr. 24.   Because the ALJ failed to state with particularity the weight given to this treating source opinion, which ordinarily would be entitled to controlling weight, the Court cannot conclude that the ALJ's decision is supported by substantial evidence.   This is particularly so because here, as in *Lawton*, Dr. Rectanus' opinion is contrary to Plaintiff's RFC.   Although the ALJ limited Plaintiff to "unskilled work where interactions with others are routine, superficial, and incidental to the work performed," Dr. Rectanus explicitly stated that his opinion that Plaintiff had marked and extreme social limitations would not change if only minimal contact or interaction with others is required.   Tr. 19; Tr. 629.

The law is clear that courts may not reweigh the evidence.   *See, e.g., Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (explaining that the "narrow nature"

of courts' appellate review precludes reweighing the evidence or substituting judgment for that of the Commissioner); *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986) ("The reviewing court cannot reweigh the evidence or substitute its own judgment concerning the facts."); *Furs-Julius v. Soc. Sec. Admin.*, 589 Fed. Appx. 510, 511 (11th Cir. 2015) ("[W]e cannot reweigh the evidence on appeal.") (citing *Moore*, 405 F.3d at 1213). Thus, remand is warranted for the ALJ to explain with particularity the weight he afforded to Plaintiff's treating psychologist and his reasons for doing so.

## V.    Conclusion

Although the ALJ largely considered the record and medical opinions consistent with the Regulations, he failed to specify the weight given to one of Plaintiff's treating physicians.   Because the Court cannot reweigh the evidence or substitute its own judgment as to the weight properly accorded this opinion, remand to the Commissioner is warranted.   Similarly, because Dr. Rectanus' opinion includes limitations greater that Plaintiffs RFC, the Court cannot conclude that the ALJ's opinion in this respect is supported by substantial evidence without the benefit of the ALJ's statement as to the weight he assigned to the opinion.   As a result, the Court cannot find that the ALJ's determination that jobs exist in significant numbers in the national economy that Plaintiff can perform, which is based on his RFC, is supported by substantial evidence.   The Court therefore also cannot find that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.

Accordingly, it is

**ORDERED:**

1.      The decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

      a.  identify the weight accorded to the opinion of Dr. Rectanus, Plaintiff's treating psychologist, and explain in detail the reasons for making such determination;

      b.  reevaluate Plaintiff's RFC; and

      c.  make any further determinations consistent with this Opinion and Order, or in the interest of justice.

2.      The Clerk of Court is directed to enter judgment in favor of Plaintiff Hugh Alexander, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 25th day of March, 2015.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record